IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

TYSON JAMIRE KNIGHT,                )
                                    )
    Plaintiff,                      )
                                    )
v.                                  )   Civil Action No. 3:21-cv-518–HEH
                                    )
HENRICO COUNTY POLICE               )
DEPARTMENT, *et al.*,               )
                                    )
    Defendants.                     )

## MEMORANDUM OPINION
### (Granting Defendants' Motion for Summary Judgment)

Tyson Jamire Knight, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action, alleging that he was injured after a high-speed chase. (ECF No. 3.)[1] Specifically, Knight alleges the following:

Claim One:  Defendants subjected him to "cruel and unusual punishment, negligence, and deliberate indifference," by pulling him out of his vehicle, carrying him, and dropping him causing multiple injuries after he led officers on a high-speed chase. (*Id.* at 8.)

Knight indicated that his claim was brought pursuant to the Eighth Amendment, however, as explained in the Memorandum Opinion entered on October 18, 2022, Knight was not a convicted prisoner, and the Eighth Amendment did not apply. (ECF No. 23 at 7.) By Memorandum Opinion and Order entered on October 18, 2022, the Court denied the

---

[1] The Court employs the pagination assigned to the parties' submissions by the CM/ECF docketing system. The Court corrects the punctuation, spelling, and capitalization and omits the emphasis in quotations from the parties' submissions.
    As explained in the Memorandum Opinion entered on October 18, 2022, only the original Complaint is before the Court. (*See* ECF No. 23 at 3 n.2.)

Motion to Dismiss because Officer R.W. Milleker; Officer R. Clemons; and Officer J.L. James ("Officers" or "Defendants") of the Henrico Police Department[2] failed to address the applicability of the Fourth or Fourteenth Amendments to Knight's claim. (*Id.* at 10.)

The matter is before the Court on the Officers' Motion for Summary Judgment. (ECF No. 26.) Knight has filed a response. (ECF No. 28.) For the reasons stated below, the Motion for Summary Judgment will be granted.

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility of informing the Court of the basis for the motion and identifying the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for

---

[2] By Memorandum Order entered on February 28, 2022, the Court dismissed the Henrico County Police Department from the action. (ECF No. 10.) The Court utilizes the spelling of the Officers' names as set forth in the Motion for Summary Judgment.

2

trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c), (e) (1986)). In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere "*scintilla* of evidence" will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)).

In support of their Motion for Summary Judgment, the Officers have submitted the following, as relevant here: (1) an affidavit from Officer Clemons (ECF No. 26-2); (2) an affidavit from Officer James (ECF No. 26-3); (3) an affidavit from Officer Milleker (ECF No. 26-4); (4) an Incident Crime Report from Knight's arrest (ECF No. 26-8); and, a Police Vehicle Pursuit After-Action Report (ECF No. 26-9). The Officers also submitted two body-worn camera recordings from the incident.

At this stage, the Court is tasked with assessing whether Knight "has proffered sufficient proof, in the form of *admissible* evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993)

3

(emphasis added). Because Knight failed to swear to the contents of his Complaint under penalty of perjury, the Complaint fails to constitute admissible evidence. *See United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004). Moreover, Knight responded to the Motion for Summary Judgment with his own Motion for Summary Judgment which simply asks for judgment to be entered in his favor. (ECF No. 28.) Knight failed to submit an affidavit or any other evidence with his unsworn response.

Knight's failure to present any admissible evidence to counter the Officers' Motion for Summary Judgment permits the Court to rely solely on the Officers' affidavits in deciding the Motion for Summary Judgment. *See Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7 (5th Cir. 1992))). Accordingly, the following facts are established for the Motion for Summary Judgment. The Court draws all permissible inferences in favor of Knight.

## II. SUMMARY OF UNDISPUTED FACTS

On October 14, 2019, Henrico County Police Officers, including the three Officers named here, responded to a call reporting a domestic assault with a potentially armed suspect in the parking lot of Walmart on Brook Road, in Henrico County. (ECF No. 26-2 ¶ 4; ECF No. 26-3 ¶ 4; ECF No. 26-4 ¶ 4.) When Officer Hoppes arrived on the scene, two witnesses identified Knight to her, indicating that they saw him slap the victim, break her phone, struggle with her, and slam her to the ground. (ECF No. 26-8 at 4.) Officer Hoppes summoned emergency services for the victim and, while the victim was being

treated, a witness indicated that Knight was walking back to the scene of the incident. (*Id.*) Office Hoppes notified the other officers that she observed Knight approaching, and then summoned Knight by name and asked him to come speak with her about the incident. (*Id.*) Knight turned away, refused to speak with her, and maintained his right hand in his belt line under his shirt which made her believe he had a weapon. (*Id.*) Officer Hoppes drew her service weapon and instructed Knight to show his hands. (*Id.*) Knight refused her commands and continued to back away across the Walmart parking lot to the more heavily populated area near the entrance of the store. (*Id.*) At that point, Officer Hoppes called for additional police backup. (*Id.*)

Knight then turned, ran from the Officers, and seized a vehicle from a woman who was in the parking lot. (*Id.*) Knight drove through the parking lot at a high rate of speed with the car's trunk open, jumped multiple curbs to reach Brook Road, and then headed north toward the intersection of Brook Road and Parham Road. (ECF No. 26-2 ¶ 5; ECF No. 26-4 ¶¶ 4–5.) Officers Clemons and Milleker followed Knight in separate police vehicles as Knight continued north on Brook Road. (ECF No. 26-2 ¶ 5; ECF No. 26-4 ¶ 4.) Knight "operated the vehicle recklessly during the pursuit, swerving through traffic, driving in excess of 100 miles per hour, and running red lights with no regard for the safety of others." (ECF No. 26-2 ¶ 5.) The pursuit continued past Virginia Center Commons into Hanover County, where Knight took a wide right curve at over 100 miles per hour and lost control of the vehicle. (ECF No. 26-2 ¶ 5; ECF No. 26-4 ¶ 5.) The vehicle "slid[] sideways across the road and [it struck] a tree with the driver's side front

5

fender and then another tree with the rear driver's side door causing it to spin 360 degrees and come to a rest facing the woods." (ECF No. 26-2 ¶ 5.)

Officers Milleker and Clemons, as well as a third officer, approached the wrecked vehicle and held Knight at gunpoint because they believed Knight was armed. (ECF No. 26-2 ¶ 6; ECF No. 26-4 ¶ 6.) Once the Officers could see Knight's hands, Officers Milleker and Clemons removed Knight from the vehicle and laid him down on the ground so they could secure the scene and search him for weapons. (ECF No. 26-2 ¶ 6; ECF No. 26-4 ¶ 6.) The Officers removed a knife from the area of Knight's waistband in which he had been holding his hand while running from police, but no firearm was found on his person. (ECF No. 26-2 ¶ 6; ECF No. 26-4 ¶ 6.) The Officers found a Security Consultant identification badge in Knight's pocket with the name Tyson Knight on it. (ECF No. 26-2 ¶ 6; ECF No. 26-4 ¶ 6.) The Officers attempted to search the stolen vehicle, but it had been severely damaged which made searching it extremely difficult. (ECF No. 26-2 ¶ 6.)

After Knight was secured, Officer Milleker called an ambulance because Knight was complaining of chest pain and difficulty breathing. (ECF No. 26-4 ¶ 7; ECF No. 26-2 ¶ 7.) Knight then asked if the Officers could help him stand up to get some air. (ECF No. 26-4 ¶ 7; ECF No. 26-2 ¶ 7; Milleker Video 7:15–8:20.)[3] The Officers assisted Knight in standing and helped him walk the few steps from where the vehicle crashed to the road because the Officers did not want to Knight to sit down in the area where they

---

[3] One officer did suggest that maybe they should not move Knight until the rescue services arrived, but then Knight asked to be helped into a standing position. (Milleker Video 6:42–6:45.)

had thrown his knife. (ECF No. 26-4 ¶ 7; ECF No. 26-2 ¶ 7; Milleker Video 7:15–8:20.) Knight clearly walked with assistance and was not carried. (Milleker Video 7:15–8:20.) When they reached the road, the Officers carefully lowered Knight into a seated position on the blacktop and helped him lie down to await the arrival of the Hanover Rescue Squad. (ECF No. 26-4 ¶ 7; ECF No. 26-2 ¶ 7.) Officer Milleker spoke with Knight about the extent of his injuries so he could advise Hanover Rescue once they arrived. (ECF No. 26-4 ¶ 7; ECF No. 26-2 ¶ 7.) When Knight complained that he could not breathe, the Officers changed the position of his handcuffs and helped him back up into a seated position. (ECF No. 26-4 ¶ 7; ECF No. 26-2 ¶ 7.)

When Hanover Rescue arrived, the rescue workers "took over physical custody of Knight to provide him with medical care." (ECF No. 26-2 ¶ 8; ECF No. 26-4 ¶ 8.) The rescue workers attempted to lift Knight off the ground to place him on a stretcher, but the stretcher rolled away from them, and Knight fell to the ground and cried out in pain. (ECF No. 26-2 ¶ 8; ECF No. 26-4 ¶ 8.) No Henrico police officer was involved in lifting Knight or dropping him. (ECF No. 26-2 ¶ 8; ECF No. 26-4 ¶ 8.) "At no point after Knight wrecked the stolen vehicle did any Henrico Officer[] pick Knight up or carry Knight, other than upon his request assisting him to stand and walk a few steps to the road." (ECF No. 26-2 ¶ 8; see ECF No. 26-4 ¶ 8.) Likewise, "[a]t no point did a Henrico Officer drop Knight or allow him to fall while assisting him." (ECF No. 26-2 ¶ 8.) The body camera footage from the scene is entirely consistent with the Officers' sworn testimony and shows that Knight's injuries were likely sustained in the collision.

Officer Milliker later clarified that he "made a clerical error when filling out [his] narrative in the Incident Crime report" and he "mistakenly identified the third officer that participated in the pursuit and securing the scene after Knight wrecked as Officer J.L. James" but "it [was] clear from the [body camera] footage that Officer James was not present at the accident scene." (ECF No. 26-4 ¶ 3.) Officer James also indicates that, although he responded to the incident at Walmart, he did not pursue Knight out of the Walmart parking lot and was not involved any further. (ECF No. 26-3 ¶ 4.)

### III. ANALYSIS

In order to survive summary judgment for a claim under 42 U.S.C. § 1983, a plaintiff must "affirmatively show[] that the official charged acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)). Thus, Knight must demonstrate that each defendant had "personal knowledge of and involvement" in the alleged constitutional deprivation to establish liability under § 1983. *Id.* In his Complaint, Knight asserts that the Officers violated his rights under the Eighth Amendment. However, the record suggests that, at the time that Knight alleges that the Officers subjected him to excessive force by removing him from the vehicle and losing physical control of him, Knight was under arrest and at that point a pretrial detainee. Since he was not a convicted prisoner, the Eighth Amendment does not apply in that instance.

8

### A. Law For Excessive Force Claims

To the extent that Knight challenges the Officers' use of force leading up to his arrest, the claim is governed by the Fourth Amendment, and the Court reviews such claims under the "Fourth Amendment's prohibition against 'unreasonable' seizures." *Sawyer v. Asbury*, 537 F. App'x 283, 290 (4th Cir. 2013) (quoting *Graham v. Connor*, 490 U.S. 386, 395 & n.10 (1989));[4] *see Graham*, 490 U.S. at 395 (holding that *"all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."*). This standard "is an objective one" and "[t]he question is whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." *Anderson v. Russell*, 247 F.3d 125, 129 (4th Cir. 2001) (citing *Graham*, 490 U.S. at 397).

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature of and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). This test "is not capable of precise definition or mechanical application," *id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)), but instead "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate

---

[4] *Sawyer* was abrogated on different grounds by *Kingsley v. Hendrickson*, 576 U.S. 389 (2015).

9

threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Garner*, 471 U.S. at 8–9). The reasonableness of the use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 20–22 (1968)).

Nevertheless, the Fourth Circuit has "rejected any concept of a continuing seizure rule, noting that 'the Fourth Amendment . . . applies to the initial decision to detain an accused, not to the conditions of confinement after that decision has been made.'" *Robles v. Prince George's Cnty., Md.*, 302 F.3d 262, 268 (4th Cir. 2002) (omission in original) (quoting *Riley v. Dorton*, 115 F.3d 1159, 1163 (4th Cir. 1997)). Thus, "[o]nce the single act of detaining an individual has been accomplished, the [Fourth] Amendment ceases to apply." *Id.* (citation omitted); *see also Cnty of Sacramento v. Lewis*, 523 U.S. 823, 843–45 (1998).

Once Knight was lawfully arrested, he became a pretrial detainee. *United States v. Cobb*, 905 F.2d 784, 788 (4th Cir. 1990) (citing *Martin v. Gentile*, 849 F.2d 863, 865–66 (4th Cir. 1988)). Allegations of excessive force against a pretrial detainee must be evaluated under the Due Process Clause of the Fourteenth Amendment. *See Goodman v. Barber*, 539 F. App'x 87, 89 (4th Cir. 2013) (citation omitted). Under the Fourteenth Amendment, a pretrial detainee may not be subject to punishment. *See Bell*, 441 U.S. at 535; *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017) ("A pretrial detainee must not be punished at all under the Fourteenth Amendment, whether through the use of excessive force, by deliberate indifference to conditions of confinement, or otherwise."). A

detainee must show that the defendant "inflicted unnecessary and wanton pain and suffering upon the detainee." *Carr v. Deeds*, 453 F.3d 593, 605 (4th Cir. 2006) (citations omitted) (internal quotation marks omitted), *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010). A detainee may prevail by "providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015) (citations omitted).[5] The factors that a court may consider to determine whether force was objectively unreasonable may include:

> [1] the relationship between the need for the use of force and the amount of force used; [2] the extent of [the detainee's] injury; [3] any effort made by the officer to temper or to limit the amount of force; [4] the severity of the security problem at issue; [5] the threat reasonably perceived by the officer; and [6] whether the [detainee] was actively resisting.

*Id.* at 397 (citing *Graham*, 490 U.S. at 396).

"[O]fficers facing disturbances 'are often forced to make split-second judgments.'" *Id.* at 399 (citing *Graham*, 490 U.S. at 397). Consequently, courts "must judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer." *Id.* (citation omitted) (internal quotation mark omitted). Courts recognize that "agents of the state are permitted to exercise a certain degree of force in order to protect the interests of society." *Sawyer v. Asbury*, 537 F. App'x 283, 294 (4th Cir. 2013) (quoting *Justice v. Dennis*, 834 F.2d 380, 382 (4th Cir. 1987), *vacated on other grounds by* 490 U.S. 1087 (1989)). Thus, not every "push or shove, even if it may

---

[5] In *Kingsley*, the Supreme Court determined that the appropriate standard is "only that the officers' use of that force was *objectively* unreasonable," not that "the officers were *subjectively* aware that their use of force was unreasonable." 576 U.S. at 391–92.

11

later seem unnecessary" is serious enough to rise to the level of a constitutional violation. *Orem v. Rephann*, 523 F.3d 442, 447 (4th Cir. 2008) (quoting *Graham*, 490 U.S. at 396), *abrogated on other grounds by Wilkins*, 559 U.S. 34.

As such, the Court "must accord due deference to an officer's efforts to restrain a detainee when faced with a dynamic and potentially violent situation; otherwise, 'we would give encouragement to insubordination in an environment which is already volatile enough.'" *Scarbro v. New Hanover Cnty.*, 374 F. App'x 366, 370 (4th Cir. 2010) (quoting *Grayson v. Peed*, 195 F.3d 692, 696 (4th Cir. 1999)). In addition, the determination of whether an officer used excessive force must be made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley*, 576 U.S. at 397.

### B. The Officers Did Not Subject Knight to Excessive Force

Minimal analysis is needed here, because the facts at hand fall far short of demonstrating excessive force under either the Fourth or Fourteenth Amendment.

#### 1. Removing Knight from Car and Handcuffing Him[6]

As to the initial use of force—holding Knight at gunpoint, removing Knight from the vehicle, placing him on the ground, handcuffing, and searching him—the Officers argue that the reasonableness of the protective measures is governed by the Fourth Amendment because it involved bringing Knight into custody.[7] The uncontroverted

---

[6] Knight does not suggest that the high-speed chase violated the Fourth Amendment, and even if he had, the Officers' pursuit was reasonable under the circumstances.

[7] Arguably, the vehicle crash was the initial force that lead to his seizure. Therefore, by the time of the Officers' initial use of force, holding Knight at gunpoint, removing him from the car,

evidence shows that Knight had assaulted a woman, appeared to be armed, resisted arrest, ran from officers at the Walmart parking lot, stole a car, and led officers on a dangerous high-speed chase that only ended because he lost control of the vehicle. The Officers approached the vehicle with their weapons drawn and reasonably feared that Knight was armed, or could continue to resist arrest or flee. Officers Milleker and Clemons removed Knight from the vehicle, searched him, laid him on the ground, and handcuffed him. While the Officers used some force when they pulled Knight from the car and placed him on the ground, it was only with the force necessary to remove and secure a potentially armed individual who had been eluding police. Any use of force to remove Knight from the vehicle was measured and reasonable in light of the circumstances. *Cf. Anderson*, 247 F.3d at 131 (finding officers who shot individual used no excessive force under the Fourth Amendment when they "had sound reason to believe that Anderson was armed" because he repeatedly touched his waistband and refused to comply with the order to keep his hands up); *Scott v. Harris*, 550 U.S. 372, 383 (2007); *see also Conley v. Grigsby*, No. 7:22–cv–00027, 2023 WL 1868228, at *9–11 (W.D. Va. Feb. 9, 2023) (holding that officers used reasonable force in removing suspect from car and restraining him with handcuffs after he led police on a high-speed chase.).

The Officers also handcuffed Knight on the ground to enable them to search him for weapons. To the extent this could be considered a use of force, it was minimal and

---

placing him on the ground and handcuffing him, Knight may have already been in custody and the Fourteenth Amendment may apply. However, whether the use of force is examined under the Fourth or Fourteenth Amendment is ultimately of little import because the Officers' actions did not amount to unreasonable or excessive force.

13

reasonable for the officers' safety after Knight, who appeared to be armed, had eluded police, in a stolen vehicle, which culminated in a high-speed chase that endangered the general public and officers. Therefore, any use of force by the Officers during their approach to the vehicle, removing Knight from the car, placing him on the ground, handcuffing him, and searching him was imminently reasonable. Knight fails to demonstrate a violation of his Fourth Amendment rights.

### 2. Assisting Knight on to the Ambulance Lift

After Knight was restrained, he was placed in custody and became a detainee. Thus, any subsequent claim of excessive force would be governed by the Fourteenth Amendment. However, as soon as Knight had been handcuffed and searched, there was no further use of force. The Officers only repositioned Knight at his request, to enable him to reposition himself to facilitate his breathing. The Officers helped Knight stand up and walk the few steps to the asphalt to wait for the ambulance to arrive. Although assisted, Knight very clearly walked on his own. Officers Milleker and Clemons initially helped Knight sit down, then lie down, and eventually sit back up again to enable unobstructed breathing. They also adjusted his handcuff position to make him more comfortable. At no time did the Officers carry Knight by his legs or allow him to fall. Although the Hanover rescue workers did lose control of Knight when the stretcher accidentally rolled away as they tried to place Knight on it, neither Officer was involved in lifting Knight onto the stretcher. Officer James was not at the scene at that time. Therefore, Knight's allegations fall short of demonstrating that the Officers used excessive force in securing him.

In sum, Knight fails to demonstrate that any of the Officers subjected him to unreasonable or excessive force in violation of the Fourth Amendment.[8] Accordingly, Claim One lacks merit and will be dismissed.

### IV. CONCLUSION

For the foregoing reasons, the Officers' Motion for Summary Judgment (ECF No. 26) will be granted. Knight's Motion for Summary Judgment (ECF No. 28) will be denied. Claims One and the action will be dismissed.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: August 8, 2023
Richmond, Virginia

---

[8] Knight also contends that the Officers' actions amounted to negligence. As none of the Officers carried Knight or dropped him, Knight once again fails to show how the Defendants were negligent.

15